**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 97-20617
_____

BETTY R. CABALLERO,

Plaintiff-Appellant,

VERSUS

AAMCO BAIL BONDING COMPANY;
LA PLACE APARTMENTS;
and
ADOLFO QUIROS,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Texas
(H-96-CV-1300)
_____
July 16, 1998
Before JOLLY, SMITH, and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Betty Caballero appeals an adverse summary judgment on her federal civil rights and Texas state negligence claims. Finding no reversible error, we affirm.

I.

One day in July 1995, Caballero went to the apartment of her friend Ruth Garcia to pick up some furniture and housewares Garcia had sold her prior to Garcia's return to her native Honduras.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Caballero gained access to Garcia's apartment and began loading things into her vehicle. Mark Dimitroff, a private bounty hunter, was also at the La Place Apartments that day, trying to find Garcia, who had skipped bail. Investigating Caballero's activities, Dimitroff claims that he found several of the Garcia family's passports on the front seat of Caballero's vehicle. He states that he took the passports to prevent Garcia from fleeing the country, as she apparently intended to do.

Caballero saw that Dimitroff was taking something from her vehicle and went to confront him. She attempted to take back what Dimitroff had taken from her front seat. In the course of the altercation, Dimitroff allegedly knocked Caballero to the ground, causing her injury. Caballero claims that she then went to the apartment complex's management office and asked them to call the police because Dimitroff was attacking her; she also maintains that the staff refused to help her.

Caballero returned to the apartment complex the next day to find out whom had assaulted her and which apartment management personnel were on duty that day. While there, she began bleeding and was taken to a local hospital, where she was informed that she had been pregnant and that she had had a miscarriage.

II.

Caballero brought this suit, contending that Aamco Bail Bonding, La Place Apartments, and a La Place manager, Adolfo Quiros, had deprived her of her constitutionally protected liberty

2

interests under color of state law.  She also raised Texas state law tort claim, a claim of battery against Aamco, and a claim of negligence against La Place Apartments.

The parties conducted discovery.  Caballero filed several discovery motions, all of which the district court denied without prejudice.

In the meantime, Caballero moved for a protective order of her own deposition and a motion to compel the testimony of La Place employee Kim Pham, who had not attended a deposition for which inadequate notice had been given.  The district court denied the motions.

Aamco moved for sanctions under FED. R. CIV. P. 11.  Given the inconsistencies between Caballero's deposition testimony and the facts that she alleged in her complaint, Aamco argued that the complaint alleged facts that were not true and would have been known not to be true had Caballero made a reasonable inquiry prior to filing the complaint.  The defendants also moved for summary judgment.

The court granted summary judgment to all defendants and granted Aamco's motions for sanctions.[1]  After final judgment, Caballero filed a motion for reconsideration under FED. R. CIV. P. 59(e), based on an affidavit of a La Place office worker, Rebecca Reyes.  Reyes swore in her affidavit that a woman matching

---

[1] Although the district court's sanctions order reprimanded the plaintiff, it did not include an award of attorney's fees.

3

Caballero's description had knocked on the door of the apartment office on the day of the incident and that Quiros instructed her

not to call the police.  The court denied the motion for reconsideration, stating that the plaintiff had had ample time to conduct discovery before final judgment.

III.

We review a summary judgment *de novo*.  *See Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir. 1992).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial.  *See Hanks*, 953 F.2d at 997.

We begin by consulting the applicable substantive law to determine what facts and issues are material.  *See King v. Chide*, 974 F.2d 653, 655-56 (5th Cir. 1992).  We then review the evidence

relating to those issues, viewing the facts and inferences in the light most favorable to the non-movant. *See id.* If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine fact issue is presented. *See Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir. 1994).

IV.

We first consider whether the district court erred in granting summary judgment on Caballero's federal civil rights claims. The relevant issue is whether Aamco was acting "under color of state law," a requirement to maintain a cause of action under 42 U.S.C. § 1983. Accordingly, we must first determine whether Aamco and its agents' conduct is "fairly attributable to the State." *Lugar v. Edmonson Oil Co.,* 457 U.S. 922, 937 (1982).

We have previously rejected the notion that "the conduct of bail bondsmen generally constitute[s] state action, because of the interdependent relationship between bondsmen and the state's criminal court system." *Landry v. A-Able Bonding, Inc.*, 75 F.3d 200, 204 (5th Cir. 1996) (distinguishing *Jackson v. Pantazes*, 810 F.2d 426, 430 (4th Cir. 1987)). Instead, we have taken a more "fact-bound inquiry," considering "the context in which state action is alleged." *Id.* (citing *Edmonson Oil*, 457 U.S. at 939).

To show state action, the plaintiff must prove that the conduct is "fairly attributable to the State." *Edmonson Oil*,

5

457 U.S. at 937. "'Fair attribution' requires (1) that the deprivation is caused by the exercise of a state-created right or privilege, by a state-imposed rule of conduct, or by a person for whom the state is responsible, and (2) that the party charged with the deprivation may be fairly described as a state actor." *Landry*, 75 F.3d at 203-04 (citing *Edmonson Oil*, 457 U.S. at 937).

Assuming *arguendo* the first prong is met in the instant case, under *Landry*, the second prong is not. In analyzing the second part of the fair-attribution standard, we focus on the following factors: (1) "whether the bondsmen enlisted the assistance of law enforcement officers in arresting their principals"; and (2) whether the bondsmen had, and displayed, an arrest warrant. *Landry*, 75 F.3d at 204-05.

In this case, Caballero makes no allegation that Dimitroff sought the assistance of law enforcement officers in apprehending Garcia. Moreover, Dimitroff swore in his deposition that he had no arrest warrant.

Accordingly, after the defendants moved for summary judgment, the burden shifted to the plaintiff to put forth some evidence to establish a genuine fact issue regarding whether Dimitroff may "fairly be described as a state actor." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Because Caballero offered only conclusional allegations in her opposition to the summary judgment motions, rather than affidavits, depositions, or

6

other evidence contemplated by FED. R. CIV. P. 56, a genuine fact issue was not preserved, and summary judgment was proper. *See id.*[2]

V.

A.

Caballero also appeals the summary judgment to Aamco for her claim under a state-law theory of negligent hiring.

> The basis of responsibility under the doctrine of negligent hiring is the master's own negligence in hiring or retaining in his employ an incompetent servant whom the master knows or by the exercise of reasonable care should have known was incompetent or unfit and thereby creating an unreasonable risk of harm to others. Texas courts have long recognized the master's duty to make inquiry as to the competence and qualifications of those he considers for employment, especially where engaged in an occupation which could be hazardous to life and limb and requires skilled or experienced servants. This is a duty owed by the master to his other servants and [directly] to the public.

*Estate of Arrington v. Fields*, 578 S.W.2d 173, 178 (Tex. Civ. App.SSTyler 1979, writ ref'd n.r.e.).

Caballero presented no competent evidence at the summary judgment stage to show that Aamco knew or should have known that Dimitroff had a propensity for violence. Indeed, Caballero's attempt to introduce evidence of Dimitroff's criminal record failed because the events concerned occurred *after* the altercation with

---

[2] Caballero asks us to distinguish *Landry* because it did not deal with the situation in which a bounty hunter has an altercation with a third party, but rather with the situation in which the victim was the person who had skipped bail. The holding of *Landry* does not in any way turn on the status of the victim, however, but on the characteristics of the victimizer. Accordingly, we find *Landry* controlling.

CaballeroSSmaking it impossible that such events could have put Aamco on notice before hiring Dimitroff.

Caballero's other evidence is similarly exaggerated.[3] She points to Dimitroff's involvement in a civil battery proceeding, but fails to mention that Dimitroff was the *plaintiff* in that suit. She notes that we should draw an inference of bad behavior from Dimitroff's traffic violation of driving on the wrong side of the road. According to Caballero, the infraction was "an apparent euphemism for using an automobile as a deadly weapon." After reviewing the record, we disagree.

### B.

Caballero appeals the summary judgment to Aamco for Dimitroff's alleged battery, which was brought under a theory of *respondeat superior*. Aamco argued below that Dimitroff was an independent contractor and thus was not, under Texas law, subject to *respondeat superior* liability for Dimitroff's actions. *See Abalos v. Oil Dev. Co.*, 544 S.W.2d 627, 631 (Tex. 1976). Caballero responded, in her opposition to summary judgment, that Dimitroff was really an employee of Aamco, rather than an independent contractor.

The district court found that Caballero had not established a

---

[3] Caballero attempted to introduce other evidence of Dimitroff's run-ins with the law, but these were not properly authenticated (and were thus unreliable); they were properly not considered by the district court.

8

genuine issue of fact about Dimitroff's independent contractor status and therefore granted summary judgment on this claim to Aamco. On appeal, Caballero argues that the court erred by not finding a fact issue preserved on this question. She also raises, for the first time, a new theory: Even if Dimitroff was an independent contractor, Aamco could not delegate its "duty of public safety" to an independent contractor. We discuss each of these arguments below.

1.

As a Texas court has held,

> The standard test to determine whether one is acting in the capacity of an independent contractor or as an employee measures the amount of control that the employer exerts or has a right to exert over the details of the work. . . . In determining the amount of control retained by the employer, a court is required to examine a number of factors including: 1) the independent nature of the worker's business; 2) the worker's obligation to furnish the necessary tools, supplies, and materials to perform the job; 3) the worker's right to control the progress of the work except as to final results; 4) the time for which he is employed; and 5) whether he is paid for time worked or by the job.

*Alvarado v. Old Republic Ins. Co.*, 951 S.W.2d 254, 259 (Tex. App.SSCorpus Christi 1997) (citations omitted). Before the district court, Aamco introduced its independent contractor agreement with Dimitroff to show that Dimitroff was indeed an independent contractor and thus that vicarious liability should not attach to Aamco for his actions. The agreement provides, *inter alia*, that Aamco paid Dimitroff per job, rather than per hour, and

9

that Dimitroff could work for other bail bonding companies.

In response to Aamco's motion for summary judgment, Caballero introduced portions of the deposition of Robert Walker, Aamco's owner, to show that he did not know the duties of a bail bonding agency in obtaining arrest warrants. This evidence, Caballero maintains, shows that Dimitroff was more of an employee than an independent contractor.

We disagree. We fail to understand how this owner's lack of knowledge of his own business or that of his independent contractor/employee shows anything about the amount of control he exercised over Dimitroff. We therefore agree with the district court that on the evidence presented at summary judgment, judgment for Aamco was appropriate.

2.

On appeal, Caballero also advances a new theory for holding Aamco liable for Dimitroff's alleged battery. Specifically, she argues that even if Dimitroff was an independent contractor, Texas law would impose a non-delegable duty of public safety on the bail bondsman that he cannot shift to an independent contractor.

Caballero failed to present to the district court this separate theory of Aamco's liability for Dimitroff's intentional tort. In any event, we find no error, plain or otherwise, that would require reversal.

## VI.

We also decline to address the summary judgment in favor of La Place and Quiros. Although Caballero, in her brief, makes various assertions that these defendants acted improperly, she raises no arguments that, in granting summary judgment, the district court erred in finding, first, that La Place and Quiros owed no duty to her, and second, that the facts she alleged were only conclusional statements that could not support a genuine fact issue.

"An appellant abandons all issues not raised and argued in its *initial* brief on appeal." *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) (emphasis in original). "An appellant's brief must contain an argument on the issues that are raised, in order that we, as a reviewing court, may know what action *of the district court* is being complained of." *Al-Ra'id v. Ingle*, 69 F.3d 28, 31 (5th Cir. 1995) (emphasis in original) (citing FED. R. APP. P. 28(a)(6)). Because Caballero has failed to argue this claim sufficiently in her opening brief, we decline to review it now on appeal. *See United States v. Krout*, 66 F.3d 1420, 1432 (5th Cir. 1995).

## VII.

Caballero challenges the district court's discovery rulings. Specifically, she complains of the fact that the district court did not allow Reyes to be deposed and did not allow her access to

11

"Officer Pham's" report, a report allegedly made by an off-duty police officer who was residing and working at the apartment complex at the time of the incident.

"Discovery matters are entrusted to the 'sound discretion' of the district court." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (quoting *Richardson v. Henry*, 902 F.2d 414, 417 (5th Cir. 1990)). The district court properly exercised its discretion.

First, Caballero never moved in the district court to compel production of Pham's reportSSeither as part of the motion to compel discovery from La Place, or separately. The court did not err, therefore, in refusing a request that the plaintiff failed to make.[4]

Second, Caballero made no motion with respect to Reyes until after final judgment was enteredSSand then with little or no explanation for the delay. That the district court would not, at that late date, consider the motion, or Reyes's affidavit for that matter, was not error.

## VIII.

Finally, we address Aamco's separately-filed motion to this court for sanctions under FED. R. CIV. P. 11(b)(3). In the district court, Caballero was sanctioned under rule 11 for including, in her complaint, facts that she knew or could reasonably have known were

---

[4] Caballero later moved to compel the deposition of Kim Pham, Officer Pham's wife, but the district court denied it because she failed to provide adequate notice of the deposition. In doing so, again, the district court did not abuse its discretion.

12

untrue.  On appeal, she does not appeal that finding, but again restates those facts as true in her briefs to this court.

"On its face, Rule 11 does not apply to appellate proceedings. Its provision allowing the court to include 'an order to pay the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including reasonable attorney's fee' must be interpreted in light of Federal Rule of Civil Procedure 1, which indicates that the Rules only 'govern the procedure in the United States district courts.'"  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 406 (1990).  "On appeal, the litigants' conduct is governed by Federal Rule of Appellate Procedure 38, which provides:  'If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee.'"  *Id.* at 407.

We have no occasion to review the propriety of the district court's sanction order, which denied the award of attorney's fees for those proceedings, as neither party has appealed that ruling.

We must determine, however, whether, under the standards of rule 38, an award of sanctions is warranted for a frivolous appeal.

Rule 38 sanctions are discretionary.  *See* FED. R. APP. P. 38. "The threshold consideration is frivolity.  In this circuit, a frivolous appeal is either one that pursues legal points not

arguable on the merits or one in which the result is obvious." *Ozee v. American Coun. on Gift Annuities, Inc.*, 110 F.3d 1082, 1097 (5th Cir.) (citations omitted), *vacated and remanded on other grounds*, 118 S. Ct. 596 *and* 118 S. Ct. 597 (1997). Once frivolity has been established, we must determine whether sanctions are merited. *See generally* 19 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 338.30, at 338-12 (3d ed. 1998).

Caballero appeals arguments based on facts that are wholly without basis in the record. Moreover, CaballeroSSthrough her counsel, Scott LevySScontinues to advocate factual assertions found sanctionable by the district courtSSa sanction she does not even appeal. Accordingly, we impose sanctions of $2,500 on Levy under rule 38. We direct that this be paid by Levy, not Caballero.

The judgment is AFFIRMED, and Aamco's motion for sanctions on appeal is GRANTED.[56]

---

[5] Caballero's motion for oral argument is DENIED.

[6]All outstanding motions that are not addressed are hereby DENIED.

14